## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

MICHAEL LUNNON,

       Plaintiff,

   vs.                                Civ. No. 16-1152  MV/JFR

UNITED STATES OF AMERICA, *et al.*,

       Defendants.

### MAGISTRATE JUDGE'S PROPOSED FINDINGS
### AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on the United States' Motion for Partial Summary Judgment on the Section 7433 Action and Brief in Support ("Motion"), filed October 7, 2020.[2] Docs. 197, 198.  Plaintiff filed a Response on October 28, 2020.  Doc. 215.  The United States filed a Reply on November 9, 2020.  Doc. 222.  Having reviewed the parties' submissions and the relevant law, and for the reasons set forth herein, the Court finds that the United States' Motion is well taken and recommends that Defendant's Motion be **GRANTED**.

---

[1] By an Order of Reference filed June 4, 2019 (Doc. 121), the presiding judge referred this matter to the undersigned to conduct hearings as warranted, and to perform any legal analysis required to recommend an ultimate disposition of the motions.

[2] Attached to the United States' Motion are (1) Exhibit 1-Third Declaration of IRS Revenue Officer Brenda Garcia, with Exhibits A-N; (2) Exhibit 2-Declaration of Ignacio Perez De La Cruz Pursuant to 28 U.S.C. § 1746, with Exhibits A and B; (3) Exhibit 3-Redacted first page of pleading from Western District of Kentucky Case No. 3-19cv00557 at ECF 1-7; and (4) Exhibit 4-Publication 4235 – Collection Advisory Group Numbers and Addresses. Docs. 198-1, 198-2, 198-3 and 198-4.

## I.  PROCEDURAL HISTORY AND RELEVANT BACKGROUND

This action began on October 19, 2016, when Plaintiffs Michael Lunnon and LG Kendrick, LLC, filed a Complaint for Administrative Review, Injunctive Relief and Refund, Quiet Title, and Damages against the United States of America.  Doc. 1.  Following various appeals and stays, Plaintiff Michael Lunnon filed an Amended Complaint on September 18, 2018.  Doc. 104.  The Amended Complaint removed LG Kendrick, LLC, as a Plaintiff and added T. W. Lyons and The UPS Store ("TUPSS") as Defendants.  *Id.*  The Amended Complaint also removed a cause of action for quiet title, and added two causes of action, *i.e.,* Count IV against Defendant Lyons and TUPSS for RICO Violations, and Count VI against TUPSS for Bad Faith Breach of Contract.[3]  *Id.*  At its core, Plaintiff's Amended Complaint is based on allegations that the United States engaged in the unauthorized collection of Plaintiff's unpaid taxes.  *Id.*  Since the filing of his Amended Complaint, Count I (Judicial Review of Administrative Decision) and Count IV (RICO Violations by Defendant T.W. Lyons and TUPSS) have been fully dismissed, and Count III (Damages for Unauthorized Collection Against United States Under 26 U.S.C. § 7433) has been partially dismissed.[4]  Docs. 143, 154.  More recently, the Court entered orders overruling Plaintiff's objections and adopting the magistrate judge's recommendations that Count II (Refund Against Defendant United States) of Plaintiff's First Amended Complaint be partially dismissed and Count VI (Bad Faith Breach of Contract Against TUPSS) be dismissed. Docs. 235, 236.   Now before the Court is the United States' Motion for Partial Summary Judgment addressing what remains of Plaintiff's Count III.  Doc. 220.

---

[3] The Amended Complaint does not contain a Count V.  *See* Doc. 104.

[4] The Court found that Plaintiff's claim for relief under § 7433 for alleged violations of §§ 6213(a), 6303, 6330 and 6334(a)(9) and (d) were time barred.  Doc. 139 at 22-24; Doc. 143 at 9-10.

Plaintiff's third claim for relief seeks damages pursuant to 26 U.S.C. § 7433 based on allegations that the United States negligently and recklessly disregarded certain provisions of the Internal Revenue Code and engaged in the unauthorized collection of taxes.  Doc. 104 at 5-6. Plaintiff's Third Cause of Action reads in pertinent part as follows:

> 22.  Defendant United States collection actions have been in negligent or reckless disregard of the bar against collection of 26 U.S.C. § 6213(a) (collection prohibited absent deficiency notice); the pre-collection notice requirements of 26 U.S.C. § 6303 (notice of assessment), and § 6330 (Notice of Right to a Collection Due Process Hearing).

> 23.  Even assuming defendant's levy action might have had any legitimacy whatever, under its own theory that the levy applied to some salary or wage, it acted in negligent or reckless disregard of the minimum exemption from levy under 26 U.S.C. § 6334(a)(9) and (d) [describing minimum exemption amount] by demanding it be sent 100% of what might be owed to LG Kendrick.

> 24.  Further, until February 2018 defendant United States had negligently or recklessly refused to issue a levy notice release as required by 26 U.S.C. § 6343, despite the fact that it had fully collected the face amount of the levy notice months before, and nothing more was owed according to its terms
> .
> 25.  It further acted with negligent or reckless disregard of the requirement to return the surplus proceeds from its levy, as required under 26 U.S.C. § 6342(b), as the entire amount collected over the amount stated in the levy notice would be considered surplus proceeds.

> 26. Plaintiff has submitted administrative damage claims to defendant, and is pursuing this action while the claim is pending in order to preserve the limitation period going 2 years back from the time of filing this action.

> 27.  Pursuant to 26 U.S.C. § 7433, plaintiff seeks damages of at least $70,000, or a greater amount according to proof.

Doc. 104 at 5-6.  On January 29, 2020, District Judge Martha Vázquez entered an Order dismissing Plaintiff's alleged violations of 26 U.S.C. §§ 6213(a) (collection prohibited absent deficiency notice), 6303 (notice of assessment), 6330 (notice of right to a collection due process hearing), 6334(a)(9) (minimum exemption for wages, salary, and other income), and 6334(d) (exempt amount of wages, salary, or other income) as time barred.  Doc. 143.  As to what

remains of Plaintiff's third claim for relief, Plaintiff argues that the United States violated 26

U.S.C. § 6342(b) (application of proceeds of levy) by failing to return surplus proceeds to

Plaintiff, and violated 26 U.S.C. § 6343 (authority to release levy and return property) by failing

to issue a levy notice release once the March 2011 Levy at issue was satisfied.  *Id.*

## II.  <u>UNDISPUTED MATERIAL FACTS</u>

Plaintiff is the manager and sole member of LG Kendrick, LLC, a New Mexico limited

liability company.[5]  Doc. 221-1.  LG Kendrick, LLC, has a franchise agreement with TUPSS and

as a franchisee operates a store, Mail Boxes, Etc., in Gallup, New Mexico.[6]  Doc. 104 at 2.  On

March 10, 2011, the IRS sent a "Notice of Levy on Wages, Salary, and Other Income" ("March

2011 Levy") to Mail Boxes, Etc. (a/k/a TUPSS) and identified "LG Kendrick LLC as the Alter-

Ego of Michael E. Lunnon" for purposes of collecting Plaintiff's delinquent personal income

---

[5] LG Kendrick, LLC, was initially named as a Plaintiff in this action but is no longer a party.  Doc. 104.  Plaintiff Lunnon is proceeding *pro se*.  The Court notified Plaintiff on October 25, 2016, that the corporate entity LG Kendrick, LLC, was precluded from proceeding *pro se* by Local Rule 83.7.  Doc. 7.  Although counsel briefly entered an appearance on behalf of LG Kendrick, LLC, on July 26, 2017 (Doc. 59), he later withdrew (Doc. 88).  District Judge Martha Vázquez issued an order informing Plaintiff that any pleading that included the corporate entity LG Kendrick, LLC, would be stricken, and default judgment or sanctions may be imposed if LG Kendrick, LLC, appeared again without an attorney.  Doc. 89.  After Judge Vázquez's clear directive, Plaintiff filed a First Amended Complaint in which he stated that LG Kendrick, LLC, had assigned its rights to claims to Plaintiff.  Doc. 104 at 2, ¶ 5.  Plaintiff then attempted to bring claims on behalf of LG Kendrick, LLC.  However, District Judge Martha Vázquez entered an Order Overruling Plaintiff's Objections and Adopting Magistrate Judge's Proposed Findings and Recommended Disposition in which she adopted the magistrate judge's finding that Plaintiff does not have standing to pursue claims on behalf of LG Kendrick, LLC, had willfully violated the Court's orders that LG Kendrick, LLC, may only appear with an attorney, and had improperly attempted to circumvent the rule that a corporation may litigate only through a duly licensed attorney by assigning LG Kendrick, LLC's claims to himself.  Docs. 231, 236.

[6] TUPSS is a Georgia corporation operating out San Diego, California, which conducted business with New Mexico franchisee LG Kendrick, LLC.  Doc. 104 at 2.

taxes.[7] [8]  Doc. 198 at 6, ¶ 1 (citing Doc. 104 at 13 (Exh. 2)); Doc. 215 at 2, ¶ 2.  The March 2011 Levy indicated that Plaintiff owed $44,528.81 in unpaid 1040 taxes and statutory additions for years 1998, 1999 and 2005.  *Id.*  After March 2011, the IRS assessed interest on Plaintiff's 1998, 1999, and 2005 income tax accounts in the total amount of $6,036.02.  Doc. 198 at 7, ¶ 3 (citing Doc. 198-1 at 3, ¶ 8 (Exh. 1)).  Between March 2011 and August 2015, the IRS levied $36,630.30 and credited the same amount to Plaintiff's tax delinquencies.[9]  Doc. 198 at 7, ¶ 2 (citing Doc. 198-1 at 5, ¶¶ 13, 15 (Exh. 1); *Id.* at 9-15 (Exhs. A, B); *Id.* at 22-24 (Exh. F); Doc. 107-1).

On July 21, 2015, the IRS served a second Notice of Levy indicating income tax delinquencies for the tax years 2006, 2007, 2008 and 2009, and Section 6672 penalties assessed against Plaintiff for the second, third and fourth quarters of 2009 and all four quarters of 2010. *Id.* at 7-8, ¶ 4 (citing Doc. 24, Exh. A at ¶ 5; Doc. 104 at 7, ¶ 34(c)).  Between August 25, 2015, and December 19, 2017, the IRS levied $36,262.62 and credited that amount toward Plaintiff's tax liabilities as listed in the July 2015 Levy.  *Id.* at 8, ¶ 5 (citing Doc. 198-1 at 5, ¶ 16 (Exh. 1); *Id.* at 22-24 (Exh. F)).

---

[7] Plaintiff proposed a material fact that prior to issuing the March 2011 Levy the IRS had not issued Plaintiff any notice of deficiency relating to the years 1998, 1999 or 2005.  Doc. 215 at 2, ¶ 1.  Plaintiff, therefore, claims that any assessments or levies were therefore barred by 26 U.S.C. § 6213(a) (collection prohibited absent deficiency notice). *Id.*  As to this proposed material fact, however, the Court notes that on January 29, 2020, District Judge Martha Vázquez entered an Order Overruling Plaintiff's Objections and Adopting Magistrate Judge's Proposed Findings and Recommended Disposition (Doc. 143) in which she adopted the magistrate judge's finding that Plaintiff's 26 U.S.C. § 6213(a) allegations were time barred.  Doc. 143 at 9-11.  Judge Vázquez dismissed Plaintiff's allegations related to 26 U.S.C. § 6213(a) for lack of subject matter jurisdiction.  *Id.*  Plaintiff's proposed material fact, therefore, is not supported by the record.

[8] Plaintiff notes that the levy was intended to be continuous.  Doc. 215 at 2, ¶ 2.  Section 6331(e) allows for continuous levies, "The effect of a levy on salary or wages payable to or received by a taxpayer shall be continuous from the date such levy is first made until such levy is released under section 6343."  13.06 PROPERTY SUBJECT TO LEVY, 1999 WL 629301, 3-4.

[9] Plaintiff states that the IRS collected $51,252.40 related to the March 2011 Levy and seeks "$70,000, or a greater amount" in damages.  Doc. 215 at 2, ¶ 4 (citing Doc. 16 at ¶ 6 – Declaration of Michael Lunnon; Doc. 104 at 6, ¶ 27.

On October 14, 2016, LG Kendrick, LLC, submitted a "Claim for Refund, Surplus Proceeds, & Damages for Unauthorized Collections" to "Area Director, Attn: Compliance Technical Support Manager c/o Commissioner of Internal Revenue, 1111 Constitution Avenue NW, Washington, DC 20224-0002."  Doc. 198 at 8, ¶ 6 (citing Doc. 148-1), Doc. 215 at 4-7. The claim was not sent to the "Area Director Attn: Compliance technical Support Manager" of the area in which Plaintiff or LG Kendrick, LLC, resided at the time as required by 26 U.S.C. § 7433.[10]  *Id.* at ¶ 7 (Exh. 2), Doc. 215 at 4-7.  The IRS neither denied, granted or ruled upon the claim LG Kendrick, LLC, submitted.  *Id.* at ¶ 8 (Exh. 2).  No IRS advisory unit has received an administrative claim from Plaintiff.  *Id.* at ¶ 9 (citing Declaration of Cindy Morris at Doc. 107-2 at 2, ¶ 4).

---

[10] On October 14, 2016, LG Kendrick, LLC, submitted a "Claim for Refund, Surplus Proceeds, & Damages for Unauthorized Collections" addressed to   "Area Director, Attn: Compliance Technical Support Manager, c/o Commissioner of Internal Revenue, 1111 Constitution Avenue NW, Washington, DC 20224-0002."  Doc. 148-1. Mr. Lunnon, as Manager of LG Kendrick, LLC, stated therein that "[t]his claim is being submitted to the above-named office since there are no published mailing addresses for the officers named in the regulations under 26 U.S.C. § 7433, nor for the type of refund claim being made.  If you believe this claim should be sent somewhere else, then forward it to the correct party."  *Id.* at 2.  Mr. Lunnon added in a footnote in LG Kendrick, LLC's putative claim that

> [u]nder 5 U.S.C. 552 (Administrative Procedures Act [APA]), a federal agency's mailing addresses (for the public to make submissions), are supposed to be published in the Federal Register (to become regulations) for notice to the public.  If this is not done, the above statute states: "Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published." 5 U.S.C. 552(a) [final paragraph].  I have found no mailing address for the type of refund claim being made here.  Also, although the regulations at 26 C.F.R. 301.7433 name certain officers to whom damage claims are supported to be submitted, no mailing addresses (in fact no addresses at all) are provided anywhere.  Nor have I been notified of any such address(es).  Due to this substantial lack of compliance by the agency with the APA, under 5 U.S.C. §552(a), I cannot be "adversely affected" for any purported failure on my part to send any claim to some secret, unpublished mailing address.  Therefore, these claims are addressed to the head of the agency.

*Id.* at 2, n. 1.

### III.  LEGAL STANDARDS

#### A.    Summary Judgment

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)*; see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Once the moving party makes a proper summary judgment challenge, the "opposing party may not rely merely on allegations or denials in its own pleading; rather its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."  Fed. R. Civ. P. 56(e)(2); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Unsubstantiated allegations carry no probative weight in summary judgment proceedings.  To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."  *Bones v. Honeywell Int'l, Inc*., 366 F.3d 869, 875 (10th Cir. 2004) (citation omitted).  In ruling on a motion for summary judgment, a Court does not weigh the evidence or make credibility determinations, *see Anderson*, 477 U.S. at 249, but determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law," *id.* at 251-52.  And in making this determination, the Court must construe all facts in the

record, as well as the reasonable inferences that can be drawn from those facts, in a light most favorable to the nonmoving party. *See Worrell v. Henry*, 219 F.3d 1197, 1204 (10th Cir. 2000).

## B.    26 U.S.C. § 7433

Section 7433(a) presents a limited waiver of sovereign immunity by authorizing a civil action if "any officer or employee of the Internal Revenue Service" recklessly, intentionally, or negligently disregards any provision of Title 26 or a corresponding regulation in the "collection of Federal tax."  26 U.S.C. § 7433(a).  A civil action must be brought "against the United States," § 7433(a), as opposed to against an employee, and a claim for damages is available only if the taxpayer has first exhausted his administrative remedies within the IRS.  *See* § 7433(d)(1) ("A judgment for damages shall not be awarded under subsection (b) unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service.").  The requirement that administrative remedies be exhausted is mandatory, but non-jurisdictional.[11]  The manner and form for filing an administrative claim is

---

[11] The United States notes that the Tenth Circuit has yet to determine whether the failure to exhaust remedies deprives the court of subject matter jurisdiction or if it simply entitles the plaintiff to no relief.  Doc. 198 at 11.  This district has concluded that the failure to exhaust administrative remedies under § 7342(d), a virtually identical statute permitting suit for damages for the IRS's failure to release liens, is not a jurisdictional bar, applying Supreme Court cases addressing exhaustion.  *See Carter v. United States*, 2009 WL 4269595, at *8 (D.N.M. Oct. 30, 2009).  In reviewing this Court's analysis, the Tenth Circuit noted "[m]ost of the courts that have examined the issue in light of the Supreme Court's decision in *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007), have concluded that the exhaustion requirement in § 7433 is non-jurisdictional."  *Carter v. United States*, 389 F. App'x 809, 812 n. 1, 2010 WL 2982844, *2 n. 1 (10th Cir. July 29, 2010) (unpublished).  More recently, this district concluded that it had subject-matter jurisdiction over § 7433 claims finding that the issue of administrative exhaustion was non-jurisdictional.  *See United States v. Porath*, 2012 WL 13080106, at *3-4 (D.N.M. June 1, 2012).

Other circuits that have considered this issue similarly have held that administrative exhaustion under § 7433 is mandatory but not jurisdictional.  *See Hoogerheide v. IRS*, 637 F.3d 634, 636-38 (6th Cir. 2011) (holding that the exhaustion requirement is a limitation on the "plaintiff's right to relief, not to his right to enter the federal courts"); *Gray v. United States*, 723 F.3d 795, 802 (7th Cir. 2013) (concluding that 26 U.S.C. § 7433(d)(1) can reasonably be interpreted to require exhaustion of administrative remedies before suit); *Kim v. United States*, 632 F.3d 713, 719 (D.C. Cir. 2011) (noting that "exhaustion is not a pleading requirement under the Taxpayer Bill of Rights," treating § 7433(d) as a non-jurisdictional affirmative defense, and noting that "when a statute does not explicitly require a plaintiff to plead exhaustion, Jones rejects a categorical rule in favor of an analysis of the complaint . . . .  [T]o discern whether the [taxpayers] exhausted, the district court inevitably had to go beyond the face of the complaint and conduct further inquiry."); *Galvez v. IRS*, 448 F. Appx. 880, 887, 2011 WL 4348328, *6 (11th Cir. Sept. 19, 2011) (unpublished)

outlined by 26 § 301.7433-1(e).  That regulation requires that a taxpayer send an administrative

claim "in writing to the Area Director, Attn: Compliance Technical Support Manager of the area

in which the taxpayer currently resides."  26 C.F.R. § 301.7433-1(e).  The administrative claim

must include the following items:

> (i)  The name, current address, current home and work telephone numbers and any convenient times to be contacted, and taxpayer identification number of the taxpayer making the claim;

> (ii)  The grounds, in reasonable detail, for the claim (include copies of any available substantiating documentation or correspondence with the Internal Revenue Service);

> (iii)  A description of the injuries incurred by the taxpayer filing the claim (include copies of any available substantiating documentation or evidence);

> (iv)  The dollar amount of the claim, including any damages that have not yet been incurred but which are reasonably foreseeable (include copies of any available substantiating documentation or evidence); and

> (v)  The signature of the taxpayer or duly authorized representative.  For purposes of this paragraph, a duly authorized representative is any attorney, certified public accountant enrolled actuary, or any other person permitted to represent the taxpayer before the Internal Revenue Service who is not disbarred or suspected from practice before the Internal Revenue Service and who has a written power of attorney executed by the taxpayer.

*Id.*  A document submitted in substantial compliance with the regulations might be sufficient if

the "defects did not prevent the IRS from considering the merits of [the plaintiff's] claim."  *See*

*Carter v. United States*, 389 F. App'x 809, 812 n. 2, 2010 WL 2982844, *2 n. 1 (10th Cir.

July 29, 2010) (unpublished); *but see Hoogerheide v. IRS*, 637 F.3d 634, 639 (6th Cir. 2011)

(expressing doubt about the existence of such an exception "in view of the specificity of the

Treasury regulations").

---

(holding that § 7433 "lacks any indication that failure to exhaust administrative remedies should act as a jurisdictional bar to suit, and we decline to construe it in that way").

# IV. ANALYSIS

## A. The United States' Motion

### 1. The United States' Argument

In its Motion, the United States argues that summary judgment in its favor is appropriate because Plaintiff failed to exhaust his administrative remedies with the IRS before filing his action seeking damages under 26 U.S.C. § 7433 in district court and, alternatively, because the IRS did not violate any statutes and Plaintiff has not suffered actual damages.  Doc. 197 at 1, Doc. 198 at 10-19.

As to the former argument, the United States contends that before 26 U.S.C. § 7433 actions can proceed, a taxpayer must exhaust his administrative remedies by first filing a proper administrative claim, and then waiting either for the claim to be adjudicated or for a period of six months, whichever comes first, before filing a civil action in federal district court.  Doc. 198 at 12-17.  The United States asserts that here Plaintiff did neither.  *Id.*  As an initial matter, the United States argues that the administrative claim Plaintiff alleges to have made on his own behalf was submitted not by Plaintiff, but by LG Kendrick, LLC, a third party which is not a party to this case.[12]  *Id.* at 12.  As such, the United States contends that Plaintiff has not even taken the first step in exhausting his administrative remedies.  *Id.*  That aside, the United States argues that the putative administrative claim nonetheless fails to comply with the requirements set forth in 26 C.F.R. § 301.7433-1(e)(2).  For example, the United States explains that an administrative claim must be sent in writing to the Area Director, Attn: Compliance Technical Support Manager of the area in which the taxpayer currently resides.  *Id.*  Here, the United States argues that LG Kendrick, LLC's administrative claim was not addressed or mailed to the correct

---

[12] *See* fn. 10, *supra.*

IRS section.  *Id.*  Additionally, 26 C.F.R. § 301.7433(e)(2) provides that an administrative claim must include the name, current address, current home and work telephone numbers, any convenient times to be contacted, and the taxpayer identification number of the taxpayer making the claim.  *Id.*  As to those requirements, the United States argues that LG Kendrick, LLC's administrative claim failed to include a daytime phone number, convenient times to be contacted, and a proper signature.  *Id.*

As to the second requirement found in 26 C.F.R. § 301.7433-1(d) that a taxpayer must wait for a decision on the claim or until six months after the administrative claim was filed, whichever comes first, the United States contends that Plaintiff admits in requests for admission that he did not act on the claim after it was either granted or denied.  Doc. 198 at 17.  Instead, Plaintiff and LG Kendrick, LLC, initiated a civil action in federal court just five days after the putative administrative claim was dated.[13]  *See* Docs. 1 and 148-1.  As such, the United States asserts that the administrative claim failed to comply with the requirement that a taxpayer either act on a decision or wait six months before taking action in federal court.  *Id.*

In the alternative, the United States argues that even if Plaintiff had exhausted his administrative remedies, summary judgment is appropriate because the IRS did not violate either 26 U.S.C. § 6342(b) or 26 U.S.C. § 6343.  Doc. 198 at 17-20.  As to 26 U.S.C. § 6342(b), the United States explains that this section requires that "any *surplus proceeds* remaining after the application of subsection (a) shall, upon application and satisfactory proof in support thereof, be *credited or refunded* by the Secretary to the person or persons legally entitled thereto."  *Id.* at 17 (emphasis in original).  The United States argues that the IRS levied and credited *less* than the

---

[13] LG Kendrick, LLC's claim for refund pursuant to 26 U.S.C. § 7433 was dated October 14, 2016.  Doc. 148-1. Plaintiff and LG Kendrick, LLC, initiated a civil action on October 19, 2016.  Doc. 1.

amount of delinquent taxes represented in the March 2011 Notice of Levy, *i.e.,* the March 2011

Notice of Levy indicated $44,528.81 as the total amount due for the tax years 1998, 1999 and

2005, and the IRS levied and credited $36,953.62 for those years.[14]  *Id.* at 17-18.  As such, the

United States contends there were no surplus funds collected based on the March 2011 Notice of

Levy on which Plaintiff can base a claim.[15]  *Id.*  The United States further contends that even if

surplus funds had been collected based on the March 2011 Notice of Levy that the IRS, pursuant

to 26 U.S.C. § 6342(b), can opt to credit any surplus to other delinquent accounts.  *Id.*

As to Plaintiff's allegation regarding 26 U.S.C. § 6343, the United States asserts that

Plaintiff has failed to show that he suffered any damages as a result of the IRS not releasing the

March 2011 Levy.  *Id.* at 18-19.  That United States asserts that even if the IRS had released

Mail Boxes, Etc. (a/k/a TUPSS) from the March 2011 Levy on August 25, 2015 (when the IRS

last levied funds pursuant to this notice of levy) or in February 2018[16] according to Plaintiff's

calculation, funds were already being levied pursuant to an intervening July 2015 Levy.  *Id.*  The

United States, therefore, asserts the Plaintiff cannot demonstrate damages.  *Id.*  Additionally, the

United States contends that even if there had been no intervening levy, Plaintiff cannot

demonstrate he suffered any damages because the IRS was entitled to offset any surplus funds it

collected pursuant to the March 2011 Levy against Plaintiff's other delinquent accounts.  *Id.*

---

[14] The supporting affidavit from IRS Revenue Officer Brenda Garcia indicates that the amount levied pursuant to the March 2011 Levy for the tax years 1998, 1999, and 2005 was $36,630.30.  Doc. 198-1 at 5, ¶¶ 13, 15 (Ex. 1).  The United States represents that funds were levied pursuant to the March 2011 Levy from March 2011 until August 2015.  Doc. 198 at 7.

[15] The United States explains that any surplus funds Plaintiff is referring to are funds that were collected under the authority of a July 2015 Notice of Levy.  Doc. 198 at 18.

[16] Plaintiff alleges in his First Amended Complaint that "until February 2018 defendant United States had negligently or recklessly refused to issue a levy notice release as required by 26 U.S.C. § 6343."  Doc. 104 at 5, ¶ 24.  In his Response, Plaintiff states that "[a]t least as of November 9, 2016, no release had been issued."  Doc. 215 at 2, ¶ 3.

2. __Plaintiff's Response__

On the issue of exhaustion, Plaintiff argues that the United States failed to comply with certain publication requirements found in 5 U.S.C. § 552,[17] in particular that the IRS failed to publish its organizational structure and current mailing addresses in the Federal Register for making any administrative damage claims.  Doc. 215 at 4-7.  Plaintiff states he provided notice of the IRS's noncompliance of 5 U.S.C. 552, and the consequences of that failure, when he submitted LG Kendrick, LLC's claim to the "head of the agency" on October 14, 2016.[18]  *Id.* at 2-3.  As a result of the IRS's noncompliance with 5 U.S.C. 552, Plaintiff argues that he had "no obligation whatever" to submit any administrative claim.  *Id.* at 6.  Plaintiff further argues that even though he was under "no actual legal obligation to do so," he sent LG Kendrick, LLC's claim to the head of the agency anyway.[19]  *Id.*  Plaintiff further argues that 5 U.S.C. § 552 expressly states that a person cannot "be adversely affected by" an agency's noncompliance and since dismissal of a lawsuit would unquestionably be an "adverse effect," the Court's dismissal of this action here is *statutorily barred* based on his failure to submit an administrative claim.  *Id.* at 6-7.

On the issue of 26 U.S.C. § 6342(b), Plaintiff argues that the United States ignored 26 U.S.C. § 6331(b) which provides that "a levy shall extend only to property possessed and

---

[17] *Public information; agency rules, opinions, orders, records, and proceedings* a/k/a The Freedom of Information Act.  5 U.S.C. § 552.

[18] *See* fn. 10, *supra.*

[19] Plaintiff drops a footnote related to this argument in which he contends that the United States ignores in arguing that it was LG Kendrick, LLC, and not Plaintiff, who submitted the putative administrative claim, that the IRS identified LG Kendrick, LLC, as the alter ego of Michael Lunnon, such that LG Kendrick, LLC, and Michael Lunnon were "indistinguishable and one-in-the-same," and that the property could be seized only for claims made solely against Lunnon.  *Id.* at 3, n. 2.  Plaintiff also argues in his footnote that the United States ignores that LG Kendrick, LLC, assigned any rights to claims to Plaintiff.  *Id.*

obligations existing at the time thereof."  Doc. 215 at 7.  Plaintiff contends that ordinarily a levy

is a one-time event, but that the levy at issue here attached to salary and wages which made it

continuous.  *Id.*  As such, absent a release, Plaintiff contends that the levy improperly remained

in effect indefinitely.  *Id.*  Plaintiff further contends that any funds levied can only relate to a

specific levy, and that once a specific levy is satisfied, it must be released.  *Id.*  Plaintiff asserts

that the United States has provided no legal basis for its argument that an intervening, subsequent

levy can somehow supercede a prior one that was not released.  *Id.*

Plaintiff argues that the United States admits to collecting over $73,000 as a result of the

March 2011 Levy, which clearly exceeds the total amount indicated of $44,528.81.  *Id.* at 8.

Plaintiff contends, citing *Philadelphia and Reading Corp. v. United States*, 944 F.3d 1063 (3d

Cir. 1991) in support, that the United States' crediting argument necessarily fails because the

March 2011 Levy was made "in violation of statutory prohibitions on assessment and collection

in 26 U.S.C. § 6213(a) due to the failure to issue any deficiency notices for any of those years."[20]

*Id.*  Plaintiff further contends that even assuming any "credit" could be applied, 26 U.S.C. § 6407

states the "date of allowance of refund or credit" is the "date on which the Secretary first

authorizes the scheduling of an overassessment."  *Id.* at 9.  Here, Plaintiff asserts, the United

States has presented no evidence of any overassessment schedule.  *Id.*

### 3.    The United States' Reply

The United States disputes Plaintiff's arguments as follows.

First, as a general matter, the United States argues that Plaintiff has failed to raise any

factual issues that preclude summary judgment, and that Plaintiff's referencing of his own

---

[20] *See* fn. 7, *supra*.

pleadings or unsworn verbiage is insufficient to demonstrate a genuine issue of dispute.  Doc. 222 at 2.

Second, the United States argues that Plaintiff has cited no legal support for his proposition that the IRS's alleged noncompliance with certain publication requirements of 5 U.S.C. § 552 invalidates the administrative exhaustion requirements set forth in 26 U.S.C. § 7433.  *Id.* at 2-4.  The United States further argues that Plaintiff has failed to demonstrate that 5 U.S.C. § 552 requires publication in the Federal Register of the detailed information that he claims it does, *i.e.,* current mailing addresses of all the area directors in the country.  *Id.* at 4.

Next, the United States argues that even if the IRS had failed to comply with the publication requirements of 5 U.S.C. § 552, that Plaintiff has nonetheless failed to exhaust his administrative remedies because (1) the putative administrative claim dated October 14, 2016, was sent by LG Kendrick, LLC, and not Plaintiff; (2) the administrative claim was not properly signed; and (3) Plaintiff and LG Kendrick, LLC, filed a civil claim after only five days of mailing the administrative claim and did not wait until the administrative claim had been decided or for sixty days, as required.  *Id.* at 4-5.

Fourth, the United States argues that LG Kendrick, LLC, could not have assigned its 26 U.S.C. § 7433 cause of action to Plaintiff Lunnon because, even if the assignment were legitimate, LG Kendrick, LLC, as a third party has no 26 U.S.C. § 7433 action.  Doc. 222 at 5-7. The United States explains that only a taxpayer, and not a third-party, can bring a 26 U.S.C. § 7433 action.  *Id.*  Further, even if the seized funds belonged to LG Kendrick, LLC, the United States explains that a third party whose assets have been seized to satisfy another's tax delinquencies has no standing to bring a 26 U.S.C. § 7433 suit.  *Id.*  Instead, the remedy for a third party who alleges that property was wrongfully levied is to bring a wrongful levy action

15

pursuant to 26 U.S.C. § 7426 on the theory that "you levied my funds to pay another person's tax debts." *Id.*

Finally, the United States reargues that it did not violate 26 U.S.C. § 6342(b) because it collected no surplus funds on the March 2011 Levy, and that any funds Plaintiff considers to be surplus were credited to Plaintiff such that there are no damages. *Id.* at 7-8.

**B.     Plaintiff Has Failed to Exhaust Administrative Remedies**

The administrative exhaustion requirements of 26 U.S.C. 7433 are mandatory. *Carter*, 389 F. App'x at 811, n. 1 (26 U.S.C. § 7433(d) contains the mandatory requirement that the court determine whether the plaintiff has exhausted his administrative remedies); *Hoogerheide*, 637 F.3d at 636-38; *Gray*, 723 F.3d at 802. Here, it is undisputed that Plaintiff has not exhausted his administrative remedies as required. For his failure to do so, Plaintiff argues, on the one hand, that the IRS's alleged noncompliance with certain publication requirements in 5 U.S.C. § 552 relieves him of the exhaustion requirements for bringing a civil cause of action as described in 26 U.S.C. § 7433 and 26 C.F.R. § 301.7433-1, and, on the other hand, that even though he had no actual legal obligation to do so, he submitted an administrative claim to the "head of the agency" anyway which, even though made by LG Kendrick, LLC, should be attributed to him. Neither argument is persuasive.

**1.     5 U.S.C. § 552**

Section 552 states in pertinent part that

> (1) Each agency shall separately state and currently publish in the Federal Register for the guidance of the public—
>
>> (A) *descriptions of* its central and field organization and *the established place at which*, the employees (and in the case of a uniformed service, the members) from whom, and the methods whereby, the public may obtain information, make submittals or requests or obtain decisions;

16

. . .

Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published.

5 U.S.C. § 552(a) (emphasis added).  As an initial matter, the Court observes that although Plaintiff insists that 5 U.S.C. § 552 explicitly requires the IRS publish its *current mailing addresses* for making an administrative claim in the Federal Register, a plain reading of the regulation demonstrates it does not; *i.e.,* an agency shall provide a description of the established place.  Moreover, the Federal Register *describes the established place* where a taxpayer who wishes to bring a civil action for damages shall submit an administrative claim, *i.e.,* "[a]n administrative claim . . . shall be sent in writing to the Area Director, Attn: Compliance Technical Support Manager *of the area in which the taxpayer currently resides*."  26 C.F.R. § 301.7433-1(e)(1) (emphasis added).

That aside, Plaintiff has offered no evidence to support his theory that he is not required to comply with the administrative claim requirements of 26 U.S.C. § 7433 based on the IRS's alleged noncompliance with 5 U.S.C. § 552.  Further, Plaintiff misconstrues the application of the statute's "adversely affected" language.  First, "an individual may not raise an FOIA claim based on an agency's failure to publish a rule or regulation, unless he makes an 'initial showing' that 'he was adversely affected by the lack of publication....' ").  *Lake Mohave Boat Owners Ass'n v. Nat'l Park Serv*., 78 F.3d 1360, 1368 (9th Cir. 1995) (citing *Mada–Luna v. Fitzpatrick,* 813 F.2d 1006, 1018 (9th  Cir.1987) (observing that the Ninth Circuit had previously held that an individual may not raise an FOIA claim based on an agency's failure to publish a rule or regulation, unless he makes an "initial showing" that "he was adversely affected by the lack of publication or that he would have been able to pursue an alternate course of conduct" had

17

publication occurred) (citations omitted))).  Here, Plaintiff has not alleged that he would have

taken a different course of action but for the alleged lack of published mailing addresses; *i.e,* that

he would have complied with the administrative exhaustion requirements.  Instead, Plaintiff

argues *only* that the lack of publication relieves him of the administrative exhaustion

requirements pursuant to 26 U.S.C. § 7433 and that he cannot be adversely affected for his

failure to comply by having his claim dismissed.  Second, however, and more significantly, 5

U.S.C. § 552 explicitly provides that an individual cannot object to the application of an

unpublished rule in his case if he has "actual and timely notice of [its] terms." *Mada-Luna*, 813

F.2d at 1018 (citing 5 U.S.C. § 552(a)(1)).  Thus, even if the Court were to assume that the IRS

was required to publish its current mailing addresses in the Federal Register, courts have

generally read this portion of the statute as allowing an unpublished agency action to have its full

effect on parties who have actual notice of the policy or regulation at issue.  *Conservation Law*

*Found. of New England, Inc. v. Clark*, 590 F. Supp. 1467, 1476 (D. Mass. 1984) (citing *Yassini*

*v. Crosland,* 618 F.2d 1356, 1361–62 (9th Cir.1980); *Whelan v. Brinegar,* 538 F.2d 924, 927 (2d

Cir.1976); *Rodriguez v. Swank,* 318 F.Supp. 289, 295 (N.D.Ill.1970), *aff'd,* 403 U.S. 901, 91

S.Ct. 2202, 29 L.Ed.2d 677 (1971)); *see also Splane v. West*, 216 F.3d 1058, 1065 (Fed. Cir.

2000) (concluding that failure of federal agency to meet the FOIA publication requirements was

harmless where petitioner had actual notice of legal analysis at issue) (citing *New York v. Lyng,*

829 F.2d 346, 354 (2d. Cir.1987) ("the requirement for publication [of regulations] attaches only

to matters which if not published would adversely affect a member of the public") (quotations

and citations omitted))).  Here, it is undisputed that Plaintiff had actual notice of the requirement

that administrative remedies must be exhausted pursuant to 26 U.S.C. § 7433 before bringing a

civil action in district court *and* of the manner and form for filing an administrative claim as

outlined by 26 § 301.7433-1(e), as Plaintiff cites both the statute and the corresponding

regulation in LG Kendrick, LLC's putative administrative claim addressed to the "head of the

agency," which Plaintiff mailed, by the way, to an agency address that Plaintiff managed to

locate even though it was not published in the Federal Register.[21]  Doc. 148-1 at 1, n. 1.  Thus,

Plaintiff's actual knowledge of the administrative exhaustion requirements ameliorates any

alleged deficiency in the IRS's compliance with 5 U.S.C. § 552's publication requirements.

*Walcott v. United States*, 2017 WL 2901712, at *6 (D. Colo. July 7, 2017) (citing 5 U.S.C.

§ 552(a)).

### 2.     Alter Ego Theory and Assignment of Claims

The Court also finds that the putative administrative claim LG Kendrick, LLC, sent to the

"head of the agency" does not satisfy 26 C.F.R. § 301.7433-1's requirements for exhaustion of

*Plaintiff's* administrative remedies, thereby barring Plaintiff's claims.  The putative

administrative claim at issue here was clearly initiated by *LG Kendrick, LLC*, which is not a

party to this action and not the delinquent taxpayer on whom the IRS's collection was focused.

The "Claim for Refund, Surplus Proceeds, & Damages for Unauthorized Collections" begins by

stating "*Claimant LG Kendrick, LLC*, hereby makes this claim for refund and for damages for

unauthorized/illegal collection action taken against it . . ." and ends with Michael Lunnon's

signature as the "*Manager, LG Kendrick, LLC*."  Doc. 148-1 (emphasis added)  As such, it is

undisputed that *Plaintiff* did not initiate an administrative claim pursuant to 26 U.S.C. § 7433.

Additionally, Plaintiff's argument that the IRS identifying LG Kendrick, LLC, as the

alter ego of Michael Lunnon, for the purpose of collecting *Plaintiff's* delinquent taxes renders

---

[21] Because the Court finds that Plaintiff has not exhausted his administrative remedies, the Court does not address the
specific insufficiencies of LG Kendrick, LLC's October 14, 2016, administrative claim raised by the United States.

Plaintiff and LG Kendrick, LLC, "indistinguishable and one-in-the-same" in this proceeding is misplaced.  The term "alter ego" is defined generally as "a corporation used by an individual in conducting personal business, the result being that a court may impose liability on the individual by piercing the corporate veil when fraud has been perpetrated on someone dealing with the corporation."  *KMG Props. v. IRS*, No. 08-1544, 2009 WL 1885930, at *10 n.5 (W.D. Pa. June 30, 2009) (citation omitted).  Said differently, an alter ego "is an entity lacking economic substance, essentially acting as the other self of an individual or entity."  *See United States v. Scherping*, 187 F.3d 796, 803-04 (8th Cir. 1999).

The alter ego theory is generally employed where the party seeking to establish the relationship "pierces the corporate veil" in pursuit of the individual arguably hiding behind the corporation.  *See Oxford Capital Corp. v. United States,* 211 F.3d 280, 284 (5th Cir. 2000) (discussing separate corporate identity as a sham if it does not exist independent of its controlling shareholder).  The theory applies where there is such a unity of interest between a corporation and an individual that the separateness of the corporation has ceased, and holding only the corporation liable would be an injustice.[22]  *See In re Guyana Dev. Corp.*, 168 B.R. 892, 905–06 (Bankr. S.D. Tex. 1994).  Those cases typically hold a shareholder liable for the debts of a corporation.  *In re Denton*, No. 99-6059, 2000 WL 107376 (10th Cir. 2000) (standard piercing involves creditor of a corporation attempting to pierce the veil of a corporate entity to reach the assets of the controlling insider).  In a classic veil-piercing scenario, a court pierces the corporate form to hold an individual responsible for the acts done in the name of the corporation because

---

[22] Two requirements for the application of the alter ego doctrine are (1) that there be such unity of interest and ownership that the separate personalities of the corporation and its owner no longer exist, and (2) if the acts are treated as those of the corporation alone, an inequitable result will follow.  "The burden of proving an alter ego relationship rests squarely on the shoulders of the party seeking to disregard the corporate entity."  *In re Sims,* 994 F.2d 210, 217 (5th Cir.1993) (citing *In re Multiponics, Inc.,* 622 F.2d 709, 723 (5th Cir.1980)).

the court finds the individual and corporation are one and the same, *i.e.*, no more than alter egos. *See In re Krause*, 637 F.2d 1160, 1165 (10th Cir. 2011) (concerning transfer of assets in bankruptcy proceeding).

Analogously, in reverse veil piercing, "a court permits a creditor to recover a debt from the assets of a corporation determined to be the alter ego of an individual debtor, the two being so intermixed as to be essentially indistinguishable." *Id.*; *Prompt Staffing, Inc. v. United States*, 321 F. Supp. 3d 1157, 1178 (C.D. Cal. 2018) ("The use of alter ego doctrine-and thus reverse veil-piercing- is a consequence that is permissible under federal law."). Reverse piercing is a well-established theory in the federal tax realm that advances the policies of avoiding fraud and collecting delinquent federal taxes.[23] *Scherping*, 187 F.3d at 803-04 (quotations omitted).

Under the reverse-piercing doctrine, a corporation may be held liable for the acts of an insider. *In re Brugnara Props. VI*, 124 A.F.T.R.2d 2019-5251, 2019 WL 3311149, at *2 (Bankr. N.D. Cal. July 22, 2019). A variant of this doctrine, known as "outside" reverse veil piercing, occurs when a third party, *i.e.* an outsider such as the IRS, attempts to reach corporate assets to satisfy claims against an individual shareholder. *Cf. id.* (noting state court's recognition that "[m]any courts have permitted the United States to use reverse piercing theory to recover a taxpayer's delinquent tax liability from the taxpayer's alter ego business entity"); *see Zahra Spiritual Trust v. United States*, 910 F.2d 240, 243-44 (5th Cir. 1990) ("[t]he ultimate goal in a reverse piercing case is unique; rather than merely disregarding the corporate fiction and holding the shareholders accountable, the court treats the individual and the corporation as 'one and the same.'"). It appears that an LLC is even more amenable to outside reverse veil piercing than a

_____

[23] The Tenth Circuit reversed the Bankruptcy Court's application of an outside reverse piercing in *Denton*, 2000 WL 107376, at *4, because Oklahoma law did not allow it.

corporation because (1) there may be no innocent members of the LLC entity to affect (as is likely to occur with a corporation),[24] and (2) creditors of an LLC may not step into shareholders' shoes, as they can with a corporation.  *See generally In re Brugnara Props. VI*, 2019 WL 3311149, at *3 (discussing state caselaw treatment outside the tax realm).  In *Brugnara*, the tax court noted that "California federal courts show a general willingness to allow taxing authorities to reverse pierce . . . permitting the IRS to employ alter ego theory."  *Id*., at *4; *Filo America, Inc. v. Olhoss Trading Co*., 321 F. Supp. 1266, 1269 (M.D. Ala. June 22, 2004) ("The commentators who have discussed the issue as a nationwide matter have concluded that the "veil-piercing" doctrine applies to LLCs.") (citing commentaries and state law holdings).

In addition to levying on property in the taxpayer's control, the IRS can levy on property belonging to the taxpayer under another's control.  *Id*.  The levy reaches property held by a third party if that third party is holding the property as a nominee or alter ego of the taxpayer.[25]  *See G.M. Leasing Corp. v. United States*, 97 S. Ct. 619, 628 (1977) (accepting appellate court's decision that corporation was the taxpayer's alter ego); *Towe Antique Ford Found. v. IRS*, 999 F.2d 1387, 1391 (9th Cir. 1993) ("It is well settled that creditors can reach property which ostensibly belongs to a third party if that entity is the alter ego of the taxpayer."); *see also Campbell v. Comm'r of Internal Revenue*, 117 T.C.M. 1018, 2019 WL 453736, at *7 (U.S. Tax

---

[24] Applying Kansas law, the Tenth Circuit has rejected outside reverse piercing, in part, because of its impact on corporate creditor expectations.  *See Floyd v. IRS*, 151 F.3d 1295, 1299 (10th Cir. 1998).  That court acknowledged, however, that such problems would be viewed as less serious in cases where a corporation is controlled by a single shareholder because no prejudice would result to third-party shareholders.  *Id*. at 1300.

[25] The nominee theory focuses on whether the taxpayer is the true beneficial owner of the property according to how he treats the property.  It asks whether the taxpayer treats the property as his own and enjoys the benefits of true ownership even though another entity holds legal title.  *Prompt Staffing*, 321 F. Supp. 3d at 1171.  While, the alter ego theory analyzes whether a taxpayer has pierced the corporate veil.  *Oxford Capital Corp*., 211 F.3d at 284.  It examines the relationship between the taxpayer and the entity holding title to the property.  *See* William D. Elliot, *Fed. Tax Collect. Liens & Levies,* ¶ 9.10 (2d ed. 2008).  The alter ego theory focuses on whether the taxpayer's relationship to the title holder allows the taxpayer to retain the benefits of true ownership.  *Prompt Staffing, Inc*., 321 F. Supp. at 1157.

Court Feb. 4, 2019) ("The levy reaches property held by a third party if that third party is holding the property as a nominee or alter ego of the taxpayer."); *United States v. Letscher*, 83 F. Supp. 2d 367, 375 (S.D.N.Y. 1999) ("It is well-established that the IRS may proceed against an alter ego or nominee of a delinquent taxpayer for the purposes of satisfying the taxpayer's obligations.") (citing *LiButti v. United States*, 107 F.3d 110, 119 (2d Cir. 1997) (collecting cases and noting that under the theory of 'reverse piercing" assets of a corporate entity may be used to satisfy the debts of the controlling alter ego)).

Significantly, however, while the alter-ego theory may be based on treating the limited liability corporation and the individual as "indistinguishable" and "one and the same" for tax collection purposes, the target and focus of the collection action for purposes of civil damages claims pursuant to 26 U.S.C. § 7433 are both distinguishable and singular, *i.e,* the delinquent taxpayer. It is undisputed that the March 2011 Levy is the result of *Plaintiff's* failure to pay 1040 individual income tax. Doc. 104 at 13. As such, it is only *Plaintiff* who may bring a civil action for damages. *See* 26 U.S.C. § 7433(a) (providing that "[i]f, in connection with *any collection of Federal tax with respect to a taxpayer,* any officer or employee of the Internal Revenue Service recklessly or intentionally disregards any provision of this title or regulation promulgated under such title, *such taxpayer* may bring a civil action for damages against the United States . . . ."); *see also Ferrel v. Brown*, 847 F. Supp. 1524, 1528 (W.D. Wash. 1993), *aff'd*, 40 F.3d 1049 (9th Cir. 1994) (holding that § 7433(a) requires that "*such* taxpayer" is the person from whom the IRS collected the tax; that is, the direct taxpayer, not a third party); *Hansen v. Black*, No. 2:13-CV-736-RJS-PMW, 2014 WL 9865761, at *2 (D. Utah Jan. 14, 2014) (noting that it is well established that only the taxpayer, not a third party, who may bring suit under § 7433) (citing *Allied Royal Parking L.P. v. United States,* 166 F.3d 1000, 1003 (9th

Cir.1999); *Laukus v. United States,* 691 F.Supp.2d 119, 129 (D.D.C.2010); *see also Gass v. Dep't of Treasury,* No. 99–1179, 2000 U.S.App. LEXIS 13015, at *8 (10th Cir. June 9, 2000) (unpublished))).  Further, despite being identified as Plaintiff's alter ego for tax collection purposes, LG Kendrick, LLC, is a separate business entity that is legally distinct from its members.  *Childress v. Deering*, USDC NM Civ. No. 18-455 LF/KBM, 2019 WL 409825, at *5 (D.N.M. Jan. 29, 2019) (citing C. Bishop & D. Kleinberger, Limited Liability Companies: Tax and Business Law ¶ 6.01[1][a] (2018)).  As a third party, LG Kendrick, LLC, cannot rely on § 7433 for jurisdiction to challenge efforts to collect taxes owed by another.[26]  *Gass v. U.S. Dep't of Treasury*, 216 F.3d 1087 (10th Cir. 2000) (citing *Ferrel,* 847 F.Supp. at 1528).

The Court, therefore, finds that the IRS's identifying LG Kendrick, LLC, as Plaintiff's alter ego for tax collection purposes does not relieve Plaintiff of complying with the administrative exhaustion requirements of 26 U.S.C. § 7433 before bringing a civil action in district court.

Finally, as for Plaintiff's argument that LG Kendrick, LLC, assigned its rights to Plaintiff thereby allowing Plaintiff to act on LG Kendrick, LLC's behalf, the Court has already thoroughly addressed this issue and determined that Plaintiff does not have standing to pursue claims on behalf of LG Kendrick, LLC, had willfully violated the Court's orders that LG Kendrick, LLC, may only appear with an attorney, and had improperly attempted to circumvent the rule that a corporation may litigate only through a duly licensed attorney by assigning LG Kendrick, LLC's claims to himself.  Docs. 231, 236.  That said, notably here the putative

---

[26] Any person, *other than the taxpayer who claims an interest in the levied property*, may pursue a wrongful levy action against the United States under 26 U.S.C. § 7426(a), for recovery of the levied property.  *Gold Forever Music, Inc.*, 920 F.3d at 1098.  An action under § 7426(a) is "the exclusive remedy for an innocent third party whose property is confiscated by the IRS to satisfy another person's tax liability."  *EC Term of Years Tr. v. United States*, 127 S. Ct. 1763, 1767 (2007) (citations omitted).

administrative claim was not submitted by Plaintiff in an attempt to act on LG Kendrick, LLC's

behalf, but instead it was made by LG Kendrick, LLC.  In sum, Plaintiff's argument that LG

Kendrick, LLC, assigned its rights to Plaintiff to act on its behalf has no bearing on whether

Plaintiff exhausted his administrative remedies pursuant to 26 U.S.C. § 7433.

### 3.    Conclusion

The Court finds that Defendant has presented undisputed evidence that Plaintiff did not

file an administrative claim prior to bringing his claim in district court.  Doc. 198-2 at 3, ¶¶ 15,

16; Doc. 107-2 at 2, ¶ 4.  The Court further finds that because Plaintiff had actual notice and

knowledge of the administrative exhaustion requirements of 26 U.S.C. § 7433, as well as the

manner and form in which an administrative claim is required to be submitted pursuant to 26

C.F.R. § 301.7433-1, that Plaintiff has failed to demonstrate any adverse effect from the IRS's

alleged failure to comply with 5 U.S.C. § 552's publication requirements.  The Court further

finds that neither the IRS's identification of LG Kendrick, LLC, as Plaintiff's alter ego for tax

collection purposes nor LG Kendrick, LLC's assignment of its claims to Plaintiff relieve Plaintiff

of complying with the administrative exhaustion requirements of 26 U.S.C. § 7433.  Because

Plaintiff has failed to present any material facts from which a reasonable jury could find that he

exhausted his administrative remedies before bringing a civil action in district court pursuant to

26 U.S.C. § 7433 for alleged violations of 26 U.S.C. § 6342(b) and 26 U.S.C. § 6343, the Court

recommends that summary judgment be entered for the United States as to these claims.

### C.    26 U.S.C. 6342(b) and 26 U.S.C. 6343

In the alternative, even if the Court were to conclude that Plaintiff had sufficiently

satisfied the exhaustion requirements such that he could state a claim for damages, the Court

would recommended that the United States is entitled to summary judgment as to Plaintiffs

alleged violations of 26 U.S.C. § 6342(b) and 26 U.S.C. § 6343 in Plaintiff's Third Cause of Action.

Section 6342(b) instructs in pertinent part that "[a]ny surplus proceeds remaining after the application of [collection of liability] shall, upon application and satisfactory proof in support thereof, be credited or refunded by the Secretary to the person or persons legally entitled thereto." 26 U.S.C. 6342(b). Section 6343 instructs in pertinent part that

> the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made (if any) that such levy has been released if
>
> > (A) the liability for which such levy was made is satisfied or becomes unenforceable by reason of lapse of time[.]

26 U.S.C. 6343(a)(1)(A).

As for Plaintiff's alleged violations of 26 U.S.C. 6342(b) that the United States collected excessive amounts based on the March 2011 Levy such that Plaintiff is entitled to a refund, the United States has submitted undisputed evidence that it did not collect funds in excess of the March 2011 Levy, and that funds collected pursuant to the March 2011 Levy were applied only to the tax years 1998, 1999, and 2005. Here, the March 2011 Levy indicated that Plaintiff owed $44,528.81 in unpaid 1040 taxes and statutory additions for years 1998, 1999 and 2005. Doc. 104 at 13, Doc. 198 at 7, ¶ 2. After March 2011, the IRS assessed interest on Plaintiff's 1998, 1999, and 2005 income tax accounts in the total amount of $6,036.02. Doc. 198 at 7, ¶ 3, Doc. 198-1 at 3, ¶ 8 (Exh. 1). Despite these assessed amounts related to Plaintiff's delinquent taxes for 1998, 1999, and 2005, which total $50,564.83, the IRS in fact only levied $36,630.30 pursuant to the March 2011 Levy and credited the same amount to Plaintiff's tax delinquencies for the years 1998, 1999 and 2005. Doc. 198-1 at 5, ¶¶ 13, 15 (Exh. 1); *Id.* at 9-15 (Exhs. A, B), *Id.* at 22-24 (Exh. F); Doc. 107-1. Clearly this amount is significantly *less* than the face value of

the March 2011 Levy.  *Id.*  While Plaintiff contends that as of the filing of his Complaint on

October 19, 2016 (Doc. 1), the IRS had collected $51,252.40,[27] Plaintiff submits no evidence to

support his contention that this amount was collected solely pursuant to the March 2011 Levy

and fails to account for levied funds included in this amount that were collected pursuant to the

July 2015 Levy.[28] [29]  Additionally, Plaintiff asserts in his Response that the United States admits

in its Motion "to collection of over $73,000" (Doc. 215 at 8), but, again, Plaintiff submits no

evidence to support his assertion that this amount was collected solely pursuant to the March

2011 Levy and fails to account for levied funds included in this amount that were collected

pursuant to the July 2015 Levy.[30]  In contrast, the United States has submitted undisputed

material evidence to demonstrate that the total amount the IRS collected on the March 2011

Levy was only $36,630.30.  Doc. 198-1 at 5, ¶¶ 13, 15 (Exh. 1); *Id.* at 9-15 (Exhs. A, B), *Id.* at

22-24 (Exh. F); Doc. 107-1.  The United States has also submitted undisputed material evidence

to demonstrate that funds collected pursuant to the March 2011 Levy were applied only to

uncollected 1040 taxes for the tax years 1998, 1999, and 2005.  *Id.*  Because Plaintiff has

---

[27] Plaintiff cites his own Declaration to support this amount.  Doc. 215 at 2, ¶ 4 (citing Doc. 16, Lunnon Declaration, at ¶ 6).  However, an opposing party to a motion for summary judgment may not rely merely on allegations or denials in its own pleading; rather its response must set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."  Fed. R. Civ. P. 56(e)(2); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

[28] On July 21, 2015, the IRS served a second Notice of Levy for Plaintiff's 1040 income tax delinquencies for the tax years 2006, 2007, 2008 and 2009, and Section 6672 penalties assessed against Plaintiff for the second, third and fourth quarters of 2009 and all four quarters of 2010.  Doc. 198 at 7-8, ¶ 4 (citing Doc. 24, Exh. A at ¶ 5 and Doc. 104 at 7, ¶ 34(c)).  Between August 25, 2015, and December 19, 2017, the IRS levied $36,262.62 and credited that amount toward Plaintiff's tax liabilities as listed in the July 2015 Levy.  *Id.* at 8, ¶ 5 (citing Doc., 198-1 at 5, ¶ 16 (Exh. 1)).

[29] The United States provides sworn affidavit testimony and true and correct copies of account transcripts for the tax years at issue that demonstrates the IRS levied and credited $36,630.30 on the March 2011 Levy between April 18, 2011, and August 25, 2015.  Doc. 198-1 at 5, ¶¶ 13, 15; *Id.* at 9-15; *Id.* at 22-24; Doc. 107-1. Beginning on August 25, 2011, the IRS began collecting on its July 2015 Levy.  Doc. 198-1 at 5, ¶ 16 (Exh. 1); *Id.* at 22-24 (Exh. F).  Between August 25, 2015, and September 19, 2016 (the closest date prior to Plaintiff filing his civil action), the IRS had collected $13,187.35 on the July 2015 Levy.  *Id.* at 22-24 (Exh. F).

[30] *See* fn. 28, *supra.*

presented no evidence from which a reasonable jury could find that the IRS collected surplus proceeds pursuant to the March 2011 Levy, the Court finds that the United States is alternatively entitled to summary judgment on Plaintiff's alleged violations of 26 U.S.C. § 6342(a).[31]

As for Plaintiff's alleged violations of 26 U.S.C. 6343 that the United States failed to release the March 2011 Levy, the United States argues that even if the March 2011 Levy has not been released, Plaintiff has not demonstrated that he has suffered any recoverable damages because any levy collections after August 25, 2015, were continued pursuant to the July 2015 Levy.  Doc. 198 at 19-20.[32]  In his Response, Plaintiff argues, without more, that any funds collected pursuant to the March 2011 Levy could only relate to the tax claims noticed therein, and that without a release of the March 2011 Levy, any subsequent levy "would simply be a nullity or inapplicable."  Doc. 215 at 8.  The Court, however, is not persuaded.

Section 6343 requires that the Secretary shall release the levy upon all property and promptly notify the person upon whom such levy was made if, *inter alia*, the liability for which such was made is satisfied.  26 U.S.C. § 6343(a)(1)(A).  Here, the United States has presented undisputed evidence that the IRS began levying Plaintiff's salary and wages pursuant to the March 2011 Levy on April 18, 2011, and credited the last levy payment pursuant to the March 2011 Levy on August 25, 2015.  Doc. 198 at 7, ¶ 2; Doc. 198-1 at 5, ¶¶ 12, 15 (Exh. 1); *Id.* at 9-15 (Exhs. A, B); *Id.* at 22-24 (Exh. F); Doc. 107-1.  The United States has also presented

---

[31] The United States presents an alternative argument that even if there had been surplus funds, the IRS could properly opt to credit funds to other delinquent accounts pursuant to 26 U.S.C. § 6342(a).  Doc. 198 at 18.  The Court does not address this alternative argument having found that the undisputed evidence demonstrates that there were no surplus funds levied related to the March 2011 Levy at issue.  Doc. 198-1 at 5, ¶¶ 13, 15 (Exh. 1); *Id.* at 9-15 (Exhs. A, B); *Id.* at 22-24 (Exh. F); Doc. 107-1.

[32] The United States presents an alternative argument that if even there had been no intervening levy that Plaintiff suffered no damages because the IRS was entitled to offset any surplus funds against Plaintiff's other delinquent accounts.  Doc. 198 at 19.  The Court does not address this alternative argument having found that the undisputed evidence demonstrates that there were no surplus funds levied related to the March 2011 Levy at issue.  Doc. 198-1 at 5, ¶¶ 13, 15 (Exh. 1); *Id.* at 9-15 (Exhs. A, B); *Id.* at 22-24 (Exh. F); Doc. 107-1.

undisputed evidence that Plaintiff was delinquent in paying 1040 tax for additional tax years and

to that end, on July 21, 2015, the IRS served a second Notice of Levy indicating income tax

delinquencies for the tax years 2006, 2007, 2008 and 2009, and Section 6672 penalties assessed

against Plaintiff for the second, third and fourth quarters of 2009 and all four quarters of 2010.

*Id.* at 7-8, ¶ 4 (citing Doc. 24, Exh. A at ¶ 5 and Doc. 104 at 7, ¶ 34(c)).  The IRS began

collecting pursuant to the July 2015 Levy on August 25, 2015.  *Id.* at 8, ¶ 5; Doc. 198-1 at 5, ¶ 16

(Exh. 1); *Id.* at 22-24  (Exh. F).

   The Court finds that Plaintiff has failed to provide evidence that he has sustained

damages or that the United States is liable for "actual, direct economic damages" as the

proximate result of the IRS's alleged failure to release the March 2011 Levy.   *See* 26 U.S.C.

§ 7433(a) and (b)(1) (a taxpayer may bring a civil action for damages against the United States

and upon a finding of liability the United States shall be liable for actual, direct economic

damages sustained by the plaintiff as a proximate result of the reckless of intentional or negligent

actions of the officer of employee).  Here, the undisputed material evidence demonstrates that

even if the IRS had released the March 2011 Levy, that Plaintiff still owed unpaid taxes for the

tax years 2006, 2007, 2008 and 2009 for which the IRS was continuing to collect on the same

property, *i.e.,* Plaintiff's salary and wages, pursuant to a subsequent levy.  Additionally, Plaintiff

has presented no evidence that the IRS was precluded from issuing a subsequent levy in the

absence of a release on the initial levy in the face of Plaintiff's ongoing unsatisfied tax liabilities.

*See* 26 U.S.C. § 6343(a)(3) ("[t]he release of levy on any property under paragraph (1) shall not

prevent any subsequent levy on such property); *see also generally* 26 U.S.C. § 6343(a)(1)(A)

(instructing the Secretary to release a levy when the liability for which the levy was made is

satisfied).  Because Plaintiff has presented no evidence from which a reasonable jury could find

that Plaintiff has suffered damages for the IRS's failure to release the March 2011 Levy, the Court finds that the United States is alternatively entitled to summary judgment on Plaintiff's alleged violations of 26 U.S.C. § 6343.

## V.  RECOMMENDATION

For the foregoing reasons, the Court finds that having viewed the undisputed material facts in a light most favorable to Plaintiff, and for the reasons discussed above, there is no evidence from which a reasonable jury could find that Plaintiff exhausted his administrative remedies before filing a civil action in district court as required by 26 U.S.C. § 7433 and 26 C.F.R. § 301.7433-1.  The Court, therefore, recommends that the United States' Motion for Partial Summary Judgment as to Plaintiff's Third Cause of Action be **GRANTED.**

In the alternative, the Court also finds that having viewed the undisputed material facts in a light most favorable to Plaintiff, and for the reasons discussed above, that there is no evidence from which a reasonable jury could find that the IRS collected surplus proceeds pursuant to the March 2011 Levy such that Plaintiff is entitled to any relief pursuant to 26 U.S.C. § 6342(a), or that Plaintiff has suffered damages due to the IRS's alleged failure to release the March 2011 Levy pursuant to 26 U.S.C. 6343.  The Court, therefore, recommends that the United States is alternatively entitled to summary judgment as to the remaining claims in Plaintiff's Third Cause of Action.

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**